21118.  DeLOACH, Administrator v. MYERS.

CANDLER, Justice.  This litigation is for specific performance of an oral contract to make a will, brought by Elease B. Myers against Thomas R. DeLoach, administrator of the estate of Cassie B. Harper.  On the former appearance of this case (*DeLoach v. Myers*, 215 Ga. 255, 109 S. E. 2d 777), this court held that the evidence was too vague, indefinite, and insufficient to support a verdict for the plaintiff.  When the remittitur was returned to the trial court, the plaintiff amended her petition by adding a second count in the nature of a quantum meruit, but on the trial elected to proceed solely on the original petition as amended, and submitted her case only on the alleged executed oral contract.  At the conclusion of the evidence and on the defendant's motion therefor, the court refused to direct a verdict in his favor.  The jury being unable to reach a verdict, a mistrial was declared.  Thereafter the defendant moved for a final judgment in his favor notwithstanding the mistrial, on the grounds that the plaintiff had failed to prove clearly the oral contract relied on; that the evidence offered by the plaintiff was not sufficiently definite, specific, and certain to support her petition for specific performance of an oral contract to make a will; and that performance of the alleged oral contract had not been proved.  The motion was denied, and the defendant administrator excepted.

The evidence which the plaintiff offered on this trial of her case was in substance as follows: Charles D. Ellis testified that he was in the real-estate business; that he handled property for Cassie B. Harper, the deceased; that when she became physically unable to come to his office, he went to her home to confer with her about her property; that, about a month before her death and while she was bedridden, she requested him to get her a lawyer so she could make a will, and that the deceased told him that she wanted to leave her property to the plaintiff because she had looked after her; that he secured a lawyer, who drew the will for her, but she died before it was executed by her.

Miss Katie Ellis, an employee in Mr. Ellis' office, testified that the plaintiff came to the office frequently on business for the deceased, and that the deceased was dependent on her.

Dr. Jacob Rubin testified that he treated the deceased for some time after 1952 for a nervous disorder, and later for paralysis of her leg; that the plaintiff accompanied her to his office and, at times he went to the deceased's home, where the plaintiff apparently had full care of her; and that he gave his instructions for treatment to the plaintiff and to the deceased.

Henry A. Cullum testified that he was formerly employed as a sales representative for the Savannah Gas Company; that he went to the deceased's home in 1952 or 1954 and tried to sell her a range; that she said she had no use for one, as the plaintiff took care of her; that he went next door, and the plaintiff bought one from him; and that he was at the deceased's home twice and saw the plaintiff bring food to her.

Rosa L. Hawthorne testified that she was a close friend of the deceased and had been for 40 years; that the deceased told her that the plaintiff looked after her, and that she wanted her property to go to the one who did so; that she visited the deceased two or three times a week; that the deceased told her that the plaintiff looked after and cared for her; that she knew the plaintiff cooked her meals; that on many occasions when she telephoned the deceased, the plaintiff would answer the phone; and that she saw the plaintiff rendering various other personal services to the deceased.

Pearl Hamilton testified that the deceased first told her in 1953 that she had an agreement with the plaintiff and was going to leave all of her property to her, and that the plaintiff was to care for her until her death; that she repeated this agreement to her several times; and that she saw the plaintiff actually rendering material personal services to the deceased and caring for her until the time of her death.

Isiaih Sellers testified that he worked for the plaintiff for nine years, and during that time and on her orders he took care of the deceased when the plaintiff was absent from home; that he cut wood for the deceased, helped clean the house, and frequently helped the plaintiff move the deceased (a large woman) while she was bedridden; that the plaintiff cooked the deceased's meals; and that he was present in 1952 when the deceased told the plaintiff and her husband that, if she would take care of her, all that she owned at her death would be given to her.

Sadie Stephens testified that she had lived upstairs in the de-

ceased's home since 1950; that she saw the plaintiff personally look after the deceased, clean her house, cook her meals, and take care of her personal bills; that, at one time the deceased told her and Mrs. Hawthorne that she wanted the plaintiff to have everything she owned, she had no one to depend on but the plaintiff; and that she called on her for everything.

Simon Myers, the plaintiff's husband, testified that they moved next door to the deceased in 1951, and that the deceased told the plaintiff and him in 1952 in the presence of "Uncle Bud" Tindle, Mrs. Sellers, and Mrs. Hawthorne that she needed someone to care for her, as she could not do anything for herself; that, if the plaintiff would "look after her" and "care for her," she would leave her everything she had; and that the plaintiff agreed to do so and afterwards fully complied with her agreement.

Oscar Tindle testified that he had since 1949 lived immediately back of the houses occupied by the plaintiff and the deceased; that he saw the plaintiff at the deceased's home every day; that he had seen the plaintiff rendering personal services to the deceased; that the plaintiff had taken some boards off a fence so that she could easily get into the deceased's yard; that in 1952 on a holiday, she called Sellers, Nathaniel Hamilton, and his wife, the plaintiff, and her husband and himself into her room, and told the plaintiff that, if she would care for her, on her death everything she owned would be hers and that the plaintiff agreed to do this and he afterwards saw her rendering many personal services to the deceased.

Elease Myers, the plaintiff, testified that, when she first began caring for the deceased, her aunt, she was having trouble with her neck and back—a condition which gradually grew worse; that she took the deceased to several different doctors; that it was necessary for the deceased to be cared for as a child when she became more feeble as she could not control her bowels nor her kidneys; that she had not been physically able to bathe herself since 1952; that she could not cook, but she was unable to feed herself only during the last two months of her life.

Since the evidence in the instant case did not demand a verdict in favor of the defendant administrator, it necessarily follows that he was not entitled to a judgment in his favor notwithstanding the jury's failure to reach a verdict. Hence, the trial

judge did not err in denying the defendant's motion for a judgment in his favor.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 9, 1961—DECIDED FEBRUARY 9, 1961.

*Ralph L. Crawford, E. A. Friedman, H. Sol Clark, Brannen, Clark & Hester,* for plaintiff in error.

*Malcolm Maclean, Emanuel Lewis,* contra.